UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MALLORY SANTIC,

                Plaintiff,

     v.

COTY DTC HOLDINGS LLC,

                Defendant.

CASE NO. 3:26-cv-05024-DGE

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9)

Presently before the Court is Defendant's motion to compel arbitration.  (Dkt. No. 9.)  For the foregoing reasons, the motion is DENIED.

**I      BACKGROUND**

On November 4, 2025, Plaintiff Mallory Santic filed a complaint in Clark County Superior Court against Defendant Coty DTC Holdings LLC.  (Dkt. No. 1-1 at 8.)  Defendant removed the case to this Court on January 9, 2026.  (Dkt. No. 1.)  The complaint alleges that Defendant transmits "hundreds of commercial electronic mail messages with false or misleading subject lines" to Plaintiff.  (Dkt. No. 1-1 at 15.)  Plaintiff alleges that between 2023 and 2025,

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9) - 1

Defendant falsely advertised percentage discounts, "free gifts," and limited sales to her and other consumers in Washington. (*Id.* at 15–21.)  Notably, however, Defendant has sent Plaintiff email advertisements since at least December 5, 2021.  (*Id.* at 18.)

Plaintiff seeks individual relief and relief on behalf of a proposed class of Washington consumers who received an email from Defendant that contained a subject line stating or implying that "1) a 'free gift' or 'free [item] was being offered to the recipient, with no purchase requirement or any conditions or exclusions; 2) a percentage discount off would apply to the recipient's purchase 'sitewide' or off 'everything' with no conditions or exclusions; or 3) a sale, discount, price, or other offer would end soon or on a definitive date, and the sale, discount, price, or other offer continued to be offered for at least an additional day." (*Id.* at 24.)  She brings two causes of action under the Washington Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("WCPA") and seeks injunctive relief and money damages.  (*Id.* at 27–30.)

On January 30, 2026, Defendant moved to compel arbitration.  (Dkt. No. 9.)  Defendant asserts that because Plaintiff agreed to be bound by the arbitration provision in Defendant's "Terms," this dispute must be pursued in arbitration.  (*Id.* at 10.)  The Terms, effective November 1, 2022, provided, in relevant part,

> you agree that any and all claims arising from or relating to these terms or any good or service provided by us (coty dtc holdings, llc, dba kylie cosmetics) to you and/or the person or entity you represent shall be subject to binding arbitration under the federal arbitration act ("faa").  this includes claims based on contract, tort, equity, statute, or otherwise, as well as claims regarding the scope and enforceability of this provision.  it includes all claims by or against you, us, and/or others providing or receiving any product or service related to these terms or your purchase(s) or transaction(s) with us.  however, at the election of any party, any claims subject to the jurisdiction of a small claims court are not required to be arbitrated; nor are claims for injunctive relief to protect intellectual property rights.

a single arbitrator shall decide all claims and shall render a final, written decision. you may choose the american arbitration association ("aaa"), jams, or other similar arbitration service provider acceptable to us to administer the arbitration. consistent with the faa, the appropriate aaa rules, jams rules, or other service provider rules shall apply, as determined by the arbitrator. for aaa and jams, these rules are found at www.adr.org and www.jamsadr.com.

(Dkt. No. 9-1 at 9, 19.)

## II    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). In considering a motion to compel arbitration, the "court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[1] These gateway issues, however, "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The party seeking to compel arbitration under the FAA bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). Accordingly, "[w]hen deciding whether the parties agreed to arbitrate a certain

---

[1] Section 4 of the FAA provides a judicial remedy where a party seeks to compel arbitration. *See* 9 U.S.C. § 4. Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties," for an order compelling arbitration. *Id*.

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9) - 3

matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). Likewise, "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).[2]

## III    DISCUSSION

### A. Defendant fails to establish existence of an arbitration agreement.

"First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). "That principle follows from the fundamental premise that arbitration is strictly a matter of consent." *Id.* (internal quotation marks and citation omitted). Defendant, as the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence. *Wilson*, 944 F.3d at1219.

---

[2] Similarly, Washington's Uniform Arbitration Act ("UAA") provides:

> On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement . . . [i]f the refusing party opposes the motion, the court shall proceed summarily to decide the issue. Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.

Wash. Rev. Code § 7.04A.070.

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9) - 4

Defendant's Director DTC Ecommerce attests users today "may sign up to receive emails through four different methods" and that today's methods for signing up "are materially identical to those that would have been in place in the past." (Dkt. No. 9-1 at 2, 6.)  The Director provides a copy of the Terms of the email program effective November 1, 2022. (*Id*. at 6, 9–24.)  Those Terms contain an arbitration agreement. (*Id*. at 19.)  Defendant argues an agreement "was formed when Plaintiff entered her email address" at Defendant's website and used one of the four methods for signing up to receive emails.  (Dkt. No. 9 at 18.)  In doing so, as the argument goes, Plaintiff agreed to the Terms and more specifically, agreed to the arbitration provisions.

However, as Plaintiff points out, Defendant does not submit any evidence that Plaintiff *used* any of these four methods to sign up to receive marketing emails or that she was otherwise presented with any Terms.  (Dkt. No. 13 at 10–11.)  There also is no evidence as to *when* Plaintiff allegedly signed up for Defendant's email program.  Moreover, Defendant submitted a copy of Terms that were effective as of November 1, 2022.  (Dkt. No. 9-1 at 6.)  The complaint alleges Plaintiff received at least one email advertisement as early as *December 5, 2021*.  (Dkt. 1-1 at 18.)  Because Plaintiff alleges receiving emails from Defendant before November 1, 2022, there is no reason to conclude Plaintiff agreed to the November 1, 2022 Terms.

Accordingly, the Court DENIES Defendant's motion to compel arbitration without prejudice.

**B.  Plaintiff's CEMA Claim Is Not Preempted.**

Alternatively, Defendant argues that Plaintiff's CEMA claim is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the CAN-SPAM Act).  (Dkt. No. 9 at 24–31.)  But this Court has already rejected this theory. *See Liss et al. v. Skechers USA Inc.*, Case No. 2:25-cv-05861-DGE, Dkt. No. 42 at 10–13; *Devivo v. Sheex*

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9) - 5

*Inc.*, Case No. 2:25-cv-05807-DGE, Dkt. No. 41 at 7; *Stevens-Hills v. Glamnetic LLC*, Case No. 2:26-cv-05003-DGE, Dkt. No. 36 at 4; *Cerkezoglu v. Federici Brands LLC*, Case No. 2:25-6108-DGE, Dkt. No. 29 at 4.  Defendant offers no new argument.  Thus, the Court rejects Defendant's preemption argument.[3,4]

**IV     CONCLUSION**

Accordingly, Defendant's motion to compel arbitration is DENIED.  (Dkt. No. 9.)

Dated this 7th day of July, 2026.

David G. Estudillo
United States District Judge

---

[3] Because Plaintiff's CEMA claim survives dismissal at this stage, so does her WCPA claim .

[4] Defendant argued in its motion to compel arbitration that the Court should stay the case pending resolution of a constitutional challenge to CEMA Judge Rebecca Pennell certified to the Washington State Attorney General, *see Shahpur v. Ulta Beauty, Inc.*, No. 2:25-cv-00284-RLP (E.D. Wash.), and a proposed amendment to CEMA pending before the Washington State Senate, SB 5976.  (Dkt. No. 9 at 31–33.)  However, Defendant stated in its reply that it is no longer pursuing a stay.  (Dkt. No. 20 at 4, n.1.)

ORDER DENYING MOTION TO COMPEL ARBITRATION (DKT. NO. 9) - 6